UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-20360-CIV-GOODMAN
[CONSENT CASE]

ZANIA MATTHIESEN,

    Plaintiff,

v.

BRIAN MATTHIESEN,

    Defendant.
_____/

## OMNIBUS ORDER ON MOTIONS FOR ATTORNEY'S FEES AND SANCTIONS

Brian Matthiesen ("Brian" or "Defendant") filed an Amended Verified Motion for Attorney's Fees pursuant to Florida Statute § 61.16 ("Amended Motion") and a Motion for Sanctions based on Federal Rule of Civil Procedure 11 ("Rule 11 Motion") against Zania Matthiesen ("Zania" or "Plaintiff"). [ECF Nos. 47-48]. Zania filed responses in opposition to the motions. [ECF Nos. 49-50]. For the reasons stated below, the Undersigned **denies** the Amended Motion, **grants in part** the Rule 11 Motion, and **awards** Brian **$4,393.**

I.    **BACKGROUND**

On October 18, 2011, Zania and Brian, as part of a divorce proceeding, entered into a Mediated Marital Settlement Agreement ("MSA"). [ECF No. 8-1, pp. 8-29]. On

February 21, 2012, the Circuit Court for the Eleventh Judicial Circuit of Miami-Dade County, Florida entered the Final Judgment of Dissolution of Marriage ("Final Judgment"), approving the MSA. [ECF No. 1, pp. 4-7].

On March 31, 2015, Zania moved to set aside the MSA and Final Judgment in state court, alleging that she received much less than she was entitled to because Brian filed "fraudulent financial affidavits" during the divorce proceedings. [ECF No. 8-1, pp. 30-31]. On February 1, 2016, Zania voluntarily dismissed her state court motion and filed the Complaint in this case. [ECF Nos. 1; 8-1, p. 32].

Zania alleged six counts arising from the purportedly fraudulent financial affidavit: (1) Fraud by Concealment; (2) Equitable Accounting; (3) Fraudulent Misrepresentation; (4) Negligent Misrepresentation; (5) Unjust Enrichment as to the premarital home; and (6) Unjust Enrichment as to other marital assets. [ECF No. 1, pp. 1-21].

On February 12, 2016, Brian served the Rule 11 Motion on Zania and Rafael Castro, Zania's counsel. [ECF No. 50, p. 3]. Brian asserted two grounds for sanctions: (1) diversity jurisdiction was based on false allegations and (2) the domestic relations exception barred any purported diversity jurisdiction. On March 5, 2016, the safe harbor period provided under Rule 11 expired.[1]

---

[1] Rule 11's safe harbor provision provides parties at least 21 days to cure their alleged Rule 11 violations before the violations are brought to the court's attention. Fed. R. Civ. P. 11(c).

On February 21, 2016, Brian moved to dismiss under the same arguments asserted in the Rule 11 Motion. [ECF No. 8]. On August 1, 2016, the Undersigned dismissed the case based on the domestic relations exception's applicability ("Dismissal Order"). [ECF No. 39].

On August 19, 2016, Brian filed his Rule 11 Motion [ECF No. 40], which the Undersigned struck for failure to comply with the Local Rules. [ECF No. 41]. After conferring with opposing counsel on September 7, 2016, Brian filed another Motion for Attorney's Fees on September 15, 2016. [ECF No. 43]. The Undersigned denied that motion due to additional procedural issues. [ECF No. 46].

On June 12, 2017, Brian filed two motions that cured the procedural infirmities outlined in ECF No. 46: (1) an Amended Motion seeking attorney's fees under § 61.16 [ECF No. 47] and (2) a Rule 11 Motion seeking attorney's fees as sanctions [ECF No. 48]. Zania opposed both motions. [ECF Nos. 49-50].

## II. ENTITLEMENT TO ATTORNEY'S FEES[2]

### A. Section 61.16

Brian seeks fees under § 61.16, which is the basis for awarding attorney's fees in dissolution of marriage, support, or child custody proceedings. Under this state statute,

---

[2] In the Dismissal Order [ECF No. 39, p. 10], the Court stated, "[b]ecause the Court has determined that the domestic relations exception to diversity of citizenship jurisdiction applies, the Court has no basis for subject matter jurisdiction even if complete diversity does exist. Thus, the issue of whether complete diversity exists is rendered moot." Based on this ruling, when addressing the motions, the Court will not discuss diversity jurisdiction.

> The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter, including enforcement and modification proceedings and appeals . . . . In determining whether to make attorney's fees and costs awards at the appellate level, the court shall primarily consider the relative financial resources of the parties, unless an appellate party's cause is deemed to be frivolous.

§ 61.16. Essentially, before a court can award fees under this statute, that court must consider the parties' financial resources, the merits of their positions, and the history of the divorce proceedings. *Rosen v. Rosen*, 696 So. 2d 697, 700 (Fla. 1997).

However, the Court has previously invoked the abstention doctrine when it determined that the domestic relations exception applied, and it is well-established that "the purpose of the abstention doctrine . . . is to abstain from reaching the merits of certain claims." *Stone v. Wall*, 135 F.3d 1438, 1441 n.3 (11th Cir. 1998), *certified question answered*, 734 So. 2d 1038 (Fla. 1999) (internal citations omitted).

In the Dismissal Order, the Court abstained from reaching the merits of Zania's claims as to not "review, modify and/or vacate a state court divorce decree." [ECF No. 39, p. 10]. Based on this Dismissal Order, the Court cannot consider awarding fees under § 61.16 because it requires a merits determination. [ECF No. 39, pp. 7-8]; *Stone*, 135 F.3d at 1441 n.3 ("If a court states that abstention is appropriate . . . . it should not then adjudicate the case on its merits[.]"). As a result, the Court **denies** Brian's Amended Motion without prejudice.

B. <u>Rule 11</u>

Brian also seeks Rule 11 sanctions against both Zania and her counsel. [ECF No. 48, p. 1]. However, in contrast to a determination for § 61.16 fees, imposing a "Rule 11 sanction is not a judgment on the merits[.]" *Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1992) (internal quotation omitted). Rather, it is a determination of "whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Id.* A court may impose Rule 11 sanctions after finding that it is without subject matter jurisdiction because "[t]he interest in having rules of procedure obeyed . . . does not disappear upon" such a finding. *Id.* at 139.

Rule 11 sanctions are proper when a party files a pleading: (1) for an improper purpose; (2) based on a legal theory that has no reasonable chance of success; or (3) that has no reasonable factual basis. *Lee v. Mid-State Land & Timber Co.*, 285 F. App'x 601, 608 (11th Cir. 2008) (internal citation omitted). Courts must "avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time [the document] was submitted." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (internal quotation and citation omitted).

i. *Improper Purpose*

Brian fails to offer any evidence that Zania or her attorney brought this action for an improper purpose. [ECF No. 48, p. 4]. As previously stated, the Court will not consider arguments as to lack of diversity, and the Court's decision to abstain from

5

exercising jurisdiction is not enough to suggest an improper purpose. *Geico Gen. Ins. Co. v. Hampel*, No. 11-61620-CIV, 2012 WL 204284, at *3 (S.D. Fla. Jan. 6, 2012), *report and recommendation adopted*, 2012 WL 204176 (S.D. Fla. Jan. 24, 2012) ("The Court's discretionary decision to abstain from the exercise of federal jurisdiction does not even suggest a finding of bad faith. Thus, there is no merit in the defendant's claim that sanctions under Rule 11 are warranted").

Brian makes two additional observations he believes show improper purpose: (1) Zania included assertions in her Complaint that are similar to those in her state-court motion to set aside the MSA and (2) that Zania voluntarily dismissed her state-court motion and filed this Complaint on the same day. [ECF No. 48, pp. 2-3]. However, without actual objective evidence of *intent*, these observations do not persuade the Court that Zania or her attorney brought this action for an improper purpose. *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1508 (11th Cir. 1993) (stating that courts should not conduct an "exploration of the attorney's subjective intentions") (internal quotation omitted).

ii. *Legally Baseless Complaint*[3]

However, the Court does find that Plaintiff's attorney filed a legally "baseless" and "frivolous" Complaint. [ECF No. 48, p. 4]; Fed. R. Civ. P. 11(b)(2).

---

[3] Because the Court finds that sanctions are permitted based on Plaintiff's counsel's violation of Rule 11(b)(2), by filing a legally baseless Complaint, the Court need not consider whether sanctions are permitted under Rule 11(b)(3), based on filing a Complaint without a reasonable factual basis. Fed. R. Civ. P. 11(b)(2),(3).

In the Eleventh Circuit, for a Rule 11 sanctions determination, a court must first determine "whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (internal citation omitted).

If Plaintiff's attorney failed to make a reasonable inquiry as to whether Plaintiff's claims were objectively frivolous, then the Court must impose sanctions despite the attorney's good faith belief that the claims were sound. *Worldwide Primates, Inc.*, 87 F.3d at 1254. Relevant factors in making this determination include the discoverability of the law using basic legal research and how much time for investigation was available before filing. *Id.*; *Gutierrez v. City of Hialeah*, 729 F. Supp. 1329, 1332 (S.D. Fla. 1990) (internal citations omitted).

By signing a paper, an attorney certifies that he has made reasonable inquiries to ensure that the paper is "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]"[4] Fed. R. Civ. P. 11(b)(2); *Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir. 1992) ("Rule 11 stresses the need for some prefiling inquiry.") (internal quotation omitted).

---

[4] "The rule continues to require litigants to 'stop-and-think' before initially making legal or factual contentions." Advisory Committee Notes to Rule 11, 1993 Amendment.

A basic search on any of the available legal research databases reveals that "federal courts have been wary of becoming embroiled in family law matters" and "generally abstain from deciding diversity cases involving divorce" and "enforcement of separation or divorce decrees still subject to state court modification." *Carver v. Carver*, 954 F.2d 1573, 1578 (11th Cir. 1992). Moreover, the domestic relations exception precludes federal review or modification of "a state court divorce order even when the [claimant] couches the claim in other terms." *McCavey v. Barnett*, 629 F. App'x 865, 867 (11th Cir. 2015). And it is well-established that a federal court should abstain when the following policies are present: "(1) there is a strong state interest in domestic relations; (2) the state court can competently settle the family dispute; (3) the state court continues to supervise the decree; and (4) the federal dockets are congested." *Id.* (internal citations omitted).

Zania's claims exist solely because of the parties' former marital relationship and the state court's division of the marital assets. [ECF No. 39, p. 8]. While the claims do not sound in divorce or alimony by name, the claims clearly require and seek review and modification of the MSA and Final Judgment. [ECF Nos. 1; 39, p. 6]. In addition, the state court Final Judgment specifically "reserve[d] jurisdiction over the parties and the subject matter to enforce the Final Judgment and the [MSA][.]" [ECF No. 8-1, p. 6]. Thus, it is clear that Zania's Complaint, regardless of how the claims were labeled, fell squarely within the domestic relations exception because it involved "the issuance of a

divorce . . . decree."[5] *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992) (concluding "that the domestic relations exception encompasses only cases involving the issuance of a divorce[,]" among other family law matters).

However, Rule 11 should not punish parties "who file pleadings which appear well-grounded when filed, but which discovery or subsequent investigation reveals to be meritless." *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995). The Rule 11 safe harbor provision "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection . . . if they withdraw or correct contentions after a potential violation is called to their attention." Advisory Committee Notes to Rule 11, 1993 Amendment.

This is not a case in which **subsequent** investigation revealed Zania's claims to be baseless. Rather, from the start, her claims had no reasonable chance of success. Additionally, Plaintiff's counsel insisted upon his position after the violation was called to his attention. Even if Plaintiff's counsel had a subjective good faith belief that the claims were sound [ECF No. 50, p. 10], he ignored contrary precedent to support his position. *See Cleaver*, 2014 WL 6630158, at *3 (warning that an argument ignoring relevant and contrary material is baseless and in violation of Rule 11).

---

[5] "It is baseless arguments like this that clog courts dockets and delay the administration of justice." *Cleaver v. City of Coral Springs*, No. 14-60665-CIV, 2014 WL 6630158, at *3 (S.D. Fla. Nov. 21, 2014).

Consequently, the Court finds that Zania's counsel should have known that the Complaint was objectively frivolous. *Worldwide Primates, Inc.*, 87 F.3d at 1254. Therefore, sanctions are warranted under Rule 11(b)(2).

iii. *Sanctions are only appropriate against Zania's Counsel*

Rule 11 explicitly prohibits monetary sanctions against a represented party for a Rule 11(b)(2) violation. Fed. R. Civ. P. 11(c)(5)(A); *Mike Ousley Prods., Inc.*, 952 F.2d at 383 (imposing sanctions only on the **attorney** because it was the attorney who breached the duty of reasonable inquiry). Accordingly, this Order imposes sanctions against Plaintiff's counsel only.

## III. AMOUNT OF ATTORNEYS' FEES AS RULE 11 SANCTIONS

The "selection of the type of sanction to be imposed lies within the district court's sound exercise of discretion." *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001) (internal quotation omitted). An appropriate sanction may include "an order directing payment to the movant of some or all of the reasonable attorneys' fees . . . directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

In the Eleventh Circuit, the lodestar method is used to determine the amount of attorney's fees awarded as Rule 11 sanctions.[6] *Danubis Grp., LLC v. Landmark Am. Ins. Co.*, 685 F. App'x 792, 803 (11th Cir. 2017). Additional relevant factors include (1) the

---

[6] "The most useful starting point for determining the amount of a reasonable fee is the number of hours expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

10

conduct and intent of the parties; (2) the effect the violation had on the litigation; (3) the amount necessary to deter similar misconduct; and (4) the sanctioned party's ability to pay. *Thomas v. Early Cty., Ga.*, 518 F. App'x 645, 646 (11th Cir. 2013) (citing Advisory Committee Notes to Rule 11, 1993 Amendment).

Brian requests $16,227.50 in sanctions, which consists of attorney's fees incurred for 32.65 hours of work between February 8, 2016 and August 1, 2016: (1) $15,152.50 for attorney Jay M. Levy's 27.55 hours of work at $550/hour; (2) $875.00 for associate attorney Ryan Marks' 3.5 hours of work at $250/hour; and (3) $200.00 for paralegal Natalie Alfonso's 1.6 hours of work at $125/ hour. [ECF No. 48, p. 6].

However, Brian's counsel's request does not deduct the hours not billed to the client, which is evident by reviewing the billing statements. [ECF No. 48-9]. The total number of hours listed on the statement from February 8, 2016 to September 15, 2016 is 45.15 hours, where only 25.40 hours were billed to the client. Upon further reducing the hours to the time billed through August 1, 2016, the total number of billed hours is reduced by another 10.75 hours and amounts to 14.65 hours. Therefore, the Court will treat Brian's counsel's request as seeking fees for 14.65 hours only.[7]

---

[7] This is because the Court must omit hours that would be unreasonable to bill a client and therefore one's adversary, "irrespective of the skill, reputation, or experience of counsel." *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) (quoting *Hensley*, 461 U.S. at 434). A lawyer cannot be compensated for hours spent on activities for that he which not and *did not* bill his client. *Id.*

11

A. <u>Reasonable Attorney's Fees Incurred</u>

The lodestar amount is presumptively reasonable. *Hensley*, 461 U.S. at 434. However, "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *A.C.L.U. of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). Accordingly, the district court has discretion to tailor sanctions to the particular facts of the case. *Donaldson v. Clark*, 819 F.2d 1551, 1557 (11th Cir. 1987).

i. *Reasonable Hours Expended*

An attorney's fee award necessarily depends upon the time the court determines the sanctions should begin to run. *Ro-Ro Enters., Inc. v. State Farm Fire & Cas. Co.*, No. 93-1754-CIV, 1996 WL 556928, at *4 (S.D. Fla. Sept. 5, 1996). Additionally, Rule 11 sanctions cannot be imposed on an attorney's every mistake. *Etkin & Co., Inc. v. SBD LLC*, No. 11-21321-CIV, 2013 WL 12092534, at *2 (S.D. Fla. Jan. 9, 2013). Because an attorney has 21 days after receiving notice to correct his mistake, some courts start calculating attorney's fees at the time of undeniable notice of the violation rather than when the lawsuit is filed. *Ro-Ro Enters., Inc.*, 1996 WL 556928 at *4.

Zania's counsel received notice on February 12, 2016, when he received a copy of the proposed Rule 11 Motion. [ECF No. 50, p. 3]. Brian requests attorney's fees for work beginning on February 8, 2016. [ECF Nos. 48; 48-9; 48-11]. While Zania's counsel filed the Complaint without conducting reasonable inquiries, the safe harbor provision gave

12

Zania's counsel 21 days to correct his mistake after receiving undeniable notice. Unfortunately, Zania's counsel did not do so and continued to defend the frivolous claims.

Therefore, the calculation of attorney's fees will begin on February 12, 2016 -- the date Zania's counsel was put on notice that he could incur sanctions if he did not timely correct the violation. This reduces the billed hours total to 8.95 hours (14.65 minus 5.7).

    ii. *Reasonable Hourly Rate*

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by attorneys with reasonably comparable skills, experience, and reputation. *Norman*, 836 F.2d at 1299. The party requesting attorney's fees has the burden to submit satisfactory evidence establishing that the requested rate is consistent with the prevailing market rate. *Barnes*, 168 F.3d at 427. Additionally, courts may determine the prevailing rate based on several factors: its own experience, the reputation and experience of the attorney, the attorney's customary fee, the skill required to perform the legal services involved, awards in similar cases, or any direct evidence or affidavit the applicant provides of charges by similarly situated lawyers. *Norman*, 836 F.2d at 1301; *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996).

The motion for sanctions indicates that Mr. Levy's hourly rate is $550/hour. Mr. Levy states in the motion for sanctions that he has been a "board certified appellate practitioner" for twenty-six years and practices "commercial litigation, family litigation,

and employment litigation[.]" [ECF No. 48, p. 6]. The motion also indicates that Ms. Alfonso's hourly rate is $125/hour and that she has been a paralegal for seven years.[8] [ECF No. 48, p. 6].

To establish that the requested rates are consistent with the prevailing market rate, defense counsel provides brief summaries of the qualifications stated above, the fee agreement, and an affidavit stating that the time records are accurate. [ECF Nos. 48, p. 6; 48-10; 48-11]. Notably, defense counsel did not provide any direct evidence or affidavit of charges by similarly situated lawyers. *Norman*, 836 F.2d at 1301 (finding that "the fee applicants' affiants attest only to the reasonableness of the requested fee with hardly a mention of prevailing market rates[,]" which "provides little or no evidentiary support for an award."). Consequently, the Court also relies on its own knowledge regarding the reasonableness of defense counsel's hourly rates.

In *Nasco v. Hertz Corp.*, Magistrate Judge O'Sullivan recognized that Mr. Levy was highly skilled; however, after considering evidence provided in conjunction with the above factors, Judge O'Sullivan found that Mr. Levy's requested hourly rate of $425.00 was higher than the prevailing market rate and reduced his rate to $325.00. No. 09-20889-CIV, 2010 WL 309033, at *4 (S.D. Fla. Jan. 25, 2010). On the other hand, this was more than 8 years ago, and the Court is well aware that hourly rates have increased in

---

[8] Because defense counsel did not bill Brian for Ryan Marks' hours during the relevant period to assess fees, the Court will not address the reasonableness of his hourly rate.

14

that timeframe. The Court concludes that a $500 hourly billing rate is appropriate for Mr. Levy in this case.

The 8.75 hours Mr. Levy billed was done over 11 days and included (1) revising the proposed Rule 11 Motion; (2) preparing a client affidavit; and (3) drafting and filing the Motion to Dismiss. [ECF No. 48-9, p. 1-2]. Essentially, defense counsel conducted the relatively basic reasonable inquiry described above. Defense counsel's work produced a favorable outcome, but it did not require any skill, expertise, or time that would justify an hourly rate in excess of $500.

Accordingly, the Undersigned adjusts the hourly rates to $500/hour for Mr. Levy's 8.75 hours of work and $90/hour for Ms. Alfonso's 0.2 hours of work, because she merely updated the trial date and deadlines. This brings the total award thus far to **$4,393.**

  B. Additional Relevant Factors

Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Additionally, "[w]hen imposing sanctions pursuant to . . . Rule 11, a district court must consider the sanctionee's ability to pay the monetary award." *Danubis Grp.*, 2017 WL 1371383, at *10 (internal citation omitted); *Baker v. Alderman*, 158 F.3d 516, 529 (11th Cir. 1998) (stating that Rule 11 sanctions cannot be so punitive as to "bankrupt the offending parties or force them from the future practice of law.").

Plaintiff's counsel did not submit evidence regarding his inability to pay in direct response to the Rule 11 Motion. However, in his Unopposed Motion for Extension of Time, he suggests that he is unable to pay a high sanction because (1) he has recently been diagnosed with carbon monoxide poisoning and (2) he is a solo practitioner and is in a financial position that does not allow him to retain employees. [ECF No. 51, pp. 2-3]. But his inability to pay was not argued in his response to the motion for sanctions; thus, the Court cannot consider this basis to further reduce the fees imposed.

Because Plaintiff's counsel's conduct falls below acceptable practice standards, given that he failed to make reasonable inquiries and continued to defend a frivolous Complaint after receiving notice of the violation, the Court in its discretion will not further reduce fees.

## IV. CONCLUSION

For the reasons stated above, the Undersigned **denies** Brian's Amended Motion, **grants in part** Brian's Rule 11 Motion, and **awards** Brian **$4,393** in attorney's fees as Rule 11 sanctions.

**DONE AND ORDERED** in Chambers, Miami Florida, on March 1, 2018.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**<u>Copies furnished to:</u>**
All Counsel of Record